IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERIC HUNTER, | CASE NO. 1:21-cv-561 |
| Petitioner, | DISTRICT JUDGE |
| | JAMES R. KNEPP II |
| vs. | |
| | MAGISTRATE JUDGE |
| | JAMES E. GRIMES JR. |
| WARDEN DAVID W. GRAY, | |
| Respondent. | **REPORT & RECOMMENDATION** |

Eric Hunter filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1-1. Hunter is currently in custody at the Belmont Correctional Institution serving a six-year sentence imposed by the Cuyahoga County Court of Common Pleas in State v. Hunter, Case No. CR-18-627084-A. This Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Hunter's petition.

## Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell,*

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting

that presumption by clear and convincing evidence. *Id*.

The Ohio Court of Appeals for the Eighth Appellate District summarized

the facts underlying Hunter's conviction as follows:

> {¶ 2} Hunter and his wife temporarily lived with Hunter's in-law, who owned the two-story, three-bedroom home where the events occurred. The Hunters were staying with Hunter's in-law for a couple of weeks until they "passed on to where they were going." There was only one bedroom in the second story that was occupied by the victim, who had known the family since she was five years old and who had also been staying in the home for an extended period of time. The victim was 22 years old at the time. Hunter and his wife shared a room on the first floor. On the evening of the rape, the occupants of the home were sitting in the garage or outside the back of the garage listening to music.

> {¶ 3} Hunter, his wife, and the victim stayed awake the longest, and the Hunters were having drinks as the night continued. The victim drank a single beer. Eventually, Hunter's wife went into her bedroom. After she departed, Hunter started telling the victim about "something sexual that he did with someone else." Hunter went so far as to stand and mimic the sexual movement. The victim felt uncomfortable with the turn in the conversation and excused herself. Hunter claims that the victim's retelling of the events introduced competing excuses that the victim offered when leaving. The victim claims to have said she was going inside to check on her infant son, while Hunter claims that the victim also said that she was going inside to text or talk to her boyfriend.

> {¶ 4} Regardless, the victim left Hunter alone and went to her bedroom to fall asleep. The next thing the victim remembers is waking up while lying on her back, feeling pressure inside her vagina, and

seeing Hunter's face between her legs with his mouth on her vagina. On this point, Hunter claims that the victim provided a different account to the investigating police officer. In the police report, the victim was recorded as stating that she awoke with Hunter on her back while he had his head between her legs. The jury was presented both versions.

{¶ 5} As soon as the victim awoke, Hunter ran toward the steps and yelled an expletive. Although the victim gave differing accounts of what expletive was used in her trial testimony, as compared to the statements provided the investigating police officer, the general theme was the same—Hunter immediately fled the room and shouted an expletive upon the victim's waking up. The victim was still wearing underwear and a menstrual pad, which had been displaced by Hunter's conduct.

{¶ 6} The victim immediately disclosed the events to Hunter's in-law, who called the police and described the victim as being hysterical. Hunter's wife apparently left the house with Hunter at that time— neither was present when police officers responded. The victim was taken to the hospital for evaluation and preservation of evidence. DNA implicating Hunter was discovered on the victim's menstrual pad, a portion of which was preserved by the healthcare professional. Upon this evidence, the jury found Hunter guilty of forcible and substantial impairment rape, although only the substantial impairment conviction survived merger.

*State v. Hunter*, 2020-Ohio-2718, 2020 WL 2079053, at *1–2 (Ohio Ct. App. 2020).

## Procedural background

*Trial court proceedings*

In April 2018, a Cuyahoga County grand jury issued an indictment charging Hunter with two counts of rape, in violation of Ohio Revised Code §

3

2907.02(A)(1)(c) (by purposely compelling the victim to submit by force or threat of force) and (A)(2) (substantially impaired victim). Doc. 8-1, at 3. Hunter pleaded not guilty. *Id.* at 4.

During a hearing in December 2018, Hunter asked the trial court to appoint new counsel. Doc. 8-2, at 17. The court granted the motion and appointed attorney Jaye Schlachet. *Id.* at 19.

In February 2019, the trial court held a hearing during which the court explained that Hunter's charges carried potential terms of three to eleven years' imprisonment. *Id.* at 20–21. Because the charged offenses were allied offenses, however, Hunter could only be sentenced on one of the charges. *Id.* at 21–22. As a result, he faced a maximum sentence of 11 years. *Id.* at 22–21.

The court then mentioned plea negotiations, stating the court's "understanding" that "there ha[d] been no plea negotiations." *Id.* at 22. Schlachet responded that although there had been discussions, the parties were "at an impossible impasse." *Id.*

Hunter's case proceeded to trial in March 2019. *Id.* at 24. At the conclusion of the trial, the jury found Hunter guilty of both counts alleged in the indictment. *Id.* at 723–25; Doc. 8-1, at 5. At a later hearing in April 2019, the trial court merged the two counts for sentencing purposes and imposed a sentence of six years' confinement. Doc. 8-1, at 6.

4

In June 2019, Hunter filed an untimely, pro se notice of appeal along with a motion for leave to file a delayed appeal. Doc. 8-1, at 8–15. The Ohio court of appeals granted Hunter's motion. *Id*. at 18.

Acting through his appointed counsel, assistant public defender Francis Cavallo, Hunter filed a brief raising five assignments of error:

> 1. There was insufficient evidence produced at trial to support a finding of guilt on all counts.
>
> 2. The verdict of the jury was against the manifest weight of the evidence.
>
> 3. The trial court erred in failing to declare a mistrial when the State introduced impermissible opinion testimony regarding the Appellant's character, as well as flagrant and unfounded speculation as evidence.
>
> 4. The Appellant was denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution when the trial court permitted the State to introduce irrelevant, inadmissible and prejudicial statements under the guise of law enforcement "overview" testimony.
>
> 5. The cumulative errors committed during the trial deprived the Appellant of a fair trial.

Doc. 8-1, at 22–23. The court of appeals affirmed in late April 2020. *Hunter*, 2020 WL 2079053.

In June 2020, Hunter's counsel filed on his behalf a notice of appeal with the Ohio Supreme Court. Doc. 9-1, at 95–96. In his memorandum in support of jurisdiction, Hunter raised one proposition of law:

> A defendant is denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution when the trial court permits the State to introduce irrelevant, inadmissible and prejudicial statements under the guise of law enforcement "overview" testimony.

*Id*. at 98. On August 4, 2020, the Ohio Supreme Court declined under rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id*. at 118. Hunter did not seek review in the United States Supreme Court.

*Federal habeas proceedings*

Hunter filed his pro se petition for writ of habeas corpus on February 15, 2021. Doc. 1-1, at 8; *see Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding that an imprisoned petitioner's petition is deemed filed when he places it in his prison's mailing system). He raises the following grounds for relief, which are reproduced as written:

> GROUND ONE: Ineffective assistance of court appointed counsel <u>VIA</u> <u>United States vs. Cronic</u>, 466 U.S. 648.
>
> *Supporting Facts*: Failure to get the matter dismissed due to inconsistent accords; tainted/ contaminated evidence; and failure to file Crim.R. 29 for acquittal.
>
> GROUND TWO: Due process violations.
>
> *Supporting Facts*: Speedy trial
> No positive evidence, connecting crime and Petitioner.
> Tainted/contaminated evidence admitted from alleged victim.

6

> GROUND THREE: Sentence given was given under false or tricked pretense.
>
> *Supporting Facts*: Was offered a lower sentence, but declined because of my innocense, and was given heightened sentence.

Doc. 1-1, at 6.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). A state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state

procedural rules in presenting [the] claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted."). While the exhaustion requirement is technically satisfied because

9

there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and establish that actual prejudice resulted from the alleged violation of federal law, or show that a fundamental miscarriage of justice will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the" United States Supreme Court ("contrary to" clause); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from

10

th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id.* at 412; *Fields v. Jordan*, - - F.4th - -, 2023 WL 7266841, at *6 (6th Cir. Nov. 3, 2023) (en banc). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,

11

562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## Discussion

*Hunter has procedurally defaulted all of his grounds for relief*

*1. Ineffective assistance claim*

In his first ground for relief, Hunter attempts to raise a claim of ineffective assistance as to his "court[-]appointed counsel." Doc. 1-1, at 6. In his traverse, Hunter makes clear that this ground relates to his trial attorney. *See* Doc. 9, at 8 (questioning why his trial counsel didn't "attack" certain prosecution evidence). It may also be that Hunter's third ground, in which he complains that he received a longer sentence after trial than was offered during plea negotiations, raises a claim of ineffective assistance of trial counsel.

As noted, a habeas petitioner with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (citation omitted). Hunter, however, never raised an ineffective assistance argument before any Ohio court. *See* Doc. 8-1, at 22–23, 98.

12

Ohio has a "dual-track system" for raising ineffective-assistance-of-counsel claims. *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016). Grounds for relief that are "based on evidence wholly *within* the trial record must be brought on direct appeal." *Id.* "[C]laims based on evidence *outside* the trial record," on the other hand, "cannot be brought on direct review and must be raised in a petition for state post-conviction relief." *Id.* And if an ineffective-assistance claim "relies on evidence within the trial record" such that the claim could have been brought on direct appeal, Ohio's res judicata rule will bar post-conviction review of the claim. *Id.* "Ohio courts routinely apply the res judicata rule to" such claims. *Smith v. Bagley*, 642 F. App'x 579, 586 (6th Cir. 2016) (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)); *see Williams*, 460 F.3d at 806 ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.") (citing *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982)).

Because Hunter is unrepresented, the Court must construe his claims liberally. *Reho v. United States*, 53 F.4th 397, 399 (6th Cir. 2022). Liberally construing Hunter's argument, he asserts that his trial counsel should have "attack[ed] … tainted/contaminated evidence … presented from the prosecution." Doc. 9, at 8. Hunter also suggests that his counsel should have pointed out that no witness observed the victim's blood or DNA on his (Hunter's) face. *Id.* He further argues that his counsel should have exploited the fact that the "[t]he tests that were allegedly performed did NOT put Mr.

13

Hunter and this alleged victim TOGETHER, sexually at all." *Id*. Finally, his third ground might encompass an ineffective-assistance claim related to plea negotiations and his eventual sentence. *See* Doc. 4, at 6.

All of these bases for Hunter's ineffective-assistance-based ground for relief are based on evidence within the trial record. Hunter was thus required to raise them on direct appeal. *See Hill*, 842 F.3d at 936. And because these bases should have been raised on direct appeal, Ohio's res judicata rule would bar Hunter from raising them now in a state post-conviction petition. *See Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007). Hunter has therefore procedurally defaulted his ineffective-assistance-based ground for relief. *Id*.; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("Rust is barred from presenting his constitutional claims to the state courts because he had the opportunity to raise the issues during the course of his direct appeal but failed to do so.").

But what if this ground for relief were based on evidence outside the trial record? The result would be the same because Hunter did not pursue post-conviction relief in state court for this issue. *See Buckley v. Ohio*, No. 5:19-cv-424, 2020 WL 5603768, at *8 (N.D. Ohio Aug. 18, 2020), *report and recommendation adopted*, 2020 WL 5593099 (N.D. Ohio Sept. 18, 2020). Under Ohio Revised Code § 2953.21(A)(2), any petition for post-conviction relief must be filed within 365 days of the date the trial transcript is filed with the court of appeals. Hunter's record was filed on August 26, 2019. Doc. 8-2, at 2; *see* Doc. 8-1 at 19 (noting that the record was due on August 26, 2019). So Hunter's time

14

to file a petition for post-conviction relief expired in August 2020, which was before he filed his habeas petition. Any post-conviction petition that Hunter might file now would be untimely and time-barred from merits review. *See Rowe v. Buchanan*, No. 2:12-cv-141, 2012 WL 4756600, at *5 (S.D. Ohio Sept. 6, 2012), *report and recommendation adopted*, 2012 WL 4758037 (S.D. Ohio Oct. 5, 2012). As a result, even if Hunter's ineffective-assistance ground were based on extra-record evidence, it would be procedurally defaulted. *See Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010).

Hunter could avoid this default by demonstrating cause for the default and prejudice.[1] *Coleman*, 501 U.S. at 750; *Rust*, 17 F.3d at 160. To be sure, Hunter claims prejudice in that he was convicted, but he says nothing about cause. The cause-and-prejudice test, however, is "'in the conjunctive.'" *Murray v. Carrier*, 477 U.S. 478, 494–96 (1986) (citation omitted). Failure to address both prongs of the test is thus "fatal" to a habeas petitioner's effort to meet the test. *Thacker v. Rees*, 841 F.2d 1127, 1988 WL 19179, at *6 n.4 (6th Cir. 1988) (unpublished); *see Hockenbury v. Sowders*, 718 F.2d 155, 160 (6th Cir. 1983) ("The 'cause' and 'prejudice' requirement … is in the conjunctive. Not finding 'cause' in this case, we need not address the issue of prejudice."); *Jones v. Tibbals*, No. 5:13-cv-1171, 2014 WL 1806784, at *8 (N.D. Ohio May 7, 2014) ("Since the cause and prejudice standard is in the conjunctive, Petitioner's

---

[1]     Hunter could also try to show "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But he doesn't claim that he could meet this requirement.

failure to show 'cause' ends the analysis."). Hunter's ineffective assistance ground should thus be dismissed.

### 2. *Due process issues*

In his second ground, Hunter raises an array of what he says are due process claims. He alleges a speedy-trial violation, claims that "[n]o positive evidence[] connect[ed] [the] crime" to him, and asserts that "Tainted/contaminated evidence [was] admitted from [the] alleged victim." Doc. 4, at 6.

Taking this array in turn, Hunter provides no context for his speedy-trial claim in his petition, *see* Doc. 4, at 6, and doesn't mention the claim in his traverse. He has therefore forfeited his speedy trial argument. *Theriot v. Vashaw*, 982 F.3d 999, 1004 (6th Cir. 2020) (holding that a habeas petitioner forfeited an issue for which he presented no argument) (citing *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013)).

Further, Hunter never presented a speedy trial claim to any Ohio court on direct appeal. *See* Doc. 8-1, at 22–23, 98. And he can't raise the issue in a petition for post-conviction relief. *See State ex rel. Brantley v. Anderson*, 674 N.E.2d 1380, 1380 (Ohio 1997) ("an appeal … is the appropriate remedy when challenging claimed violations of an accused's right to a speedy trial"); *see also Boles v. Knab*, 958 N.E.2d 554, 555 (Ohio 2011) (same). So even if the issue is

not forfeited, it is procedurally defaulted.[2] *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.") (citations omitted).

As to Hunter's assertions that "no positive evidence[] connect[ed]" him to the crime and that "tainted/contaminated evidence [was] admitted from [the] alleged victim," some background facts will provide context. Hunter's victim testified that on the night of the rape, she was menstruating and "had a pad … [i]n [her] underwear." Doc. 8-2, at 353. After falling asleep, she awoke after "feeling pressure … in [her] vagina." *Id*. at 355. On looking down, she saw that Hunter "had his mouth on [her] vagina." *Id*. Hunter then ran out of the room. *Id*. at 356.

At some point, Hunter's victim went to a local hospital "to get a rape kit and be examined." *Id*. at 360. Relevant to Hunter's argument, when his victim went to the hospital, she was wearing the same menstrual pad and underwear as when he assaulted her. *Id*. at 361. Her examining nurse took the victim's underwear, "swabbed … [her] vagina," and discarded the pad. *Id*. at 361, 392. Later DNA testing of evidence taken from a "cutting from [the victim's] pantiliner," which was gathered by the victim's examining nurse, resulted in a match with Hunter's DNA sample. *Id*. at 431–36.

---

[2]    Hunter says nothing about cause and prejudice as to his speedy trial claim. So there is no need to discuss cause and prejudice. *Awkal*, 613 F.3d at 646.

In his traverse, Hunter says that the fact that the pad was admittedly "throw[n] … in the trash … should have" led to an acquittal. Doc. 9, at 5. From this premise, he concludes that "a defendant **cannot** be found guilty from tainted testimony and/or evidence." *Id*. He later says that none of the victim's DNA was found on his face and that the DNA "tests that were allegedly performed did NOT put" him and his victim "TOGETHER sexually." *Id*. at 8.

Finally, Hunter says that no one can be convicted "WITHOUT positive EVIDENCE of their GUILT." *Id*. He explains that because his victim "admit[ed]" that "the 'pad'" was "throw[n] … in the trash[,] … ANY chances of [a] positive test results to identify a thing or person" were "destroy[ed]." *Id*.

Liberally construing these aspects of Hunter's second ground, *see Reho*, 53 F.4th at 399, he is raising a sufficiency-of-the-evidence claim. But he never raised a sufficiency claim on direct review to the Ohio Supreme Court. *See* Doc. 8-1, at 98. He thus failed the fair presentment requirement. *See O'Sullivan*, 526 U.S. at 845–48; *Caver*, 349 F.3d at 345. And Ohio's res judicata rule would prevent him from raising a sufficiency challenge now in a petition for post-conviction relief. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) ("Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings."); *see Romero v. Warden, Chillicothe Corr. Inst.*, No. 17-3369, 2017 WL 8793325, at *2 (6th Cir. Dec. 13, 2017) (order).

Notably, because Hunter does not assert cause to excuse his default, there is no need to discuss cause and prejudice. *Awkal*, 613 F.3d at 646. So this aspect of Hunter's second ground is procedurally defaulted.[3] *Romero*, 2017 WL 8793325, at *2.

But even if Hunter had not defaulted his sufficiency challenge, he could not prevail. When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This "standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Jackson*, 443 U.S. at 319). In applying the standard, the court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-

---

[3]     To the extent that Hunter is instead raising a sort of evidentiary challenge, the challenge is not cognizable absent a showing that the alleged evidentiary ruling "so seriously impugned fundamental fairness as to deny a fair trial." *Mackey v. Russell*, 148 F. App'x 355, 360 (6th Cir. 2005); *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Hunter, however, doesn't invoke this exception and offers no basis to conclude that it might apply.

finder]." *Id.*; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr*, 487 F.3d at 449 ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, the Court defers "to the trier-of-fact's verdict, as contemplated by *Jackson*." *Davis*, 658 F.3d at 531. And second, the Court defers under the 1996 Act to the state courts' "consideration of the trier-of-fact's verdict." *Id*. So even if this Court would conclude in the first instance that a rational trier-of-fact could not have found Hunter guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This doubly deferential "standard erects 'a nearly insurmountable hurdle' for petitioners who … seek habeas relief on sufficiency-of-the-evidence grounds." *Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015) (quoting *Davis*, 658 F.3d at 534)).

Here's what the Ohio court of appeals said about Hunter's sufficiency challenge:

> {¶ 13} In this case, the victim's testimony was largely
> consistent with the version of events she provided

the healthcare professional and the investigating police officer. The minor discrepancies in the expletive she remembers Hunter yelling is of little consequence. Further, the difference between the reports of the victim being awoken with the defendant on her back, but with his head between the victim's legs, as opposed to the victim's trial testimony stating that she awoke on her back to find Hunter's head between her legs was considered and resolved by the trier of fact. On the basic events, the victim's retelling of the story was largely consistent and there was evidence of Hunter's DNA on the menstrual pad within the victim's undergarment, in part corroborating the victim's testimony. And finally, although the victim could not specifically testify to the penetration because she was asleep when the rape was committed, she unambiguously testified to feeling pressure inside her vagina and seeing Hunter's face between her legs immediately upon waking up.

{¶ 14} The jury considered and resolved the conflicts in the testimony and record, and Hunter has not demonstrated this to be the exceptional case warranting appellate intervention. The first and second assignments of error are overruled.

*Hunter*, 2020 WL 2079053, at *3.

Other than his opinions, Hunter offers no basis to overcome the "nearly insurmountable hurdle" posed by this Court's doubly deferential standard of review. *Keys*, 798 F.3d at 450. It may be, as Hunter emphasizes, that the victim's examining nurse discarded the victim's menstrual pad. Doc. 9, at 5. But the nurse retrieved evidence from it that was later found to include Hunter's DNA. Doc. 8-2, at 431–36. Hunter, however, offers no basis to disregard this evidence or explanation why his DNA would be found there.

Hunter says that says that none of the victim's DNA was found on his face. Doc. 9, at 8. This may be true, but *his* DNA was found on *her* menstrual pad. So the fact the victim's DNA was not found on Hunter's face is of no moment. Any rational jury could have relied on the DNA in finding Hunter guilty. Pointing out that the State didn't present other DNA evidence is irrelevant.

Hunter says that that the DNA "tests that were allegedly performed did NOT put" him and his victim "TOGETHER sexually." *Id*. Whatever Hunter means by this statement, the victim testified that she awoke after "feeling pressure … in [her] vagina." Doc. 8-2, at 355. And on looking down, she saw that Hunter "had his mouth on [her] vagina." *Id*. This evidence plus the evidence of Hunter's DNA on the victim's menstrual pad was sufficient for any rational jury to find Hunter guilty.

Finally, Hunter says that no one can be convicted "WITHOUT positive EVIDENCE of their GUILT." Doc. 9, at 8. But, as discussed, there was direct and circumstantial evidence of Hunter's guilt. So, even if Hunter could overcome his default, his sufficiently challenge fails.

### 3.  Challenge to Hunter's sentence

In his third ground, Hunter says that the trial court imposed a sentence "under false or tricked pretense." Doc. 4, at 6. He says that he "was offered a lower sentence, but declined because of [his] [innocence], and was given [a] heightened sentence." *Id*. In his traverse, Hunter adds that "OHIO utilizes

'scare tactics' to obtain plea bargains, when in fact, they have no real evidence." Doc. 9, at 8. Construing Hunter's third ground liberally, to the extent this ground does not raise ineffective assistance, Hunter is raising a vindictiveness claim.

It is not clear whether Hunter's ground is directed to the trial court or the prosecution. Because his case did not involve a resentencing following a successful appeal, however, the court would not presume that the trial court sentenced Hunter vindictively. *See Wasman v. United States*, 468 U.S. 559, 564–65 (1984) (explaining the presumption that applies when resentencing results in an increased sentence). So Hunter would have to "affirmatively prove actual vindictiveness." *Id*. at 569. But he has never so much as hinted that he could do that. This omission combined with Hunter's assertion that "OHIO utilizes 'scare tactics' to obtain plea bargains, when in fact, they have no real evidence," Doc. 9, at 8, leads me to construe ground three as being directed to the prosecution.

As with Hunter's other grounds, Hunter failed to present this issue to the Ohio Supreme Court on direct review. *See* Doc. 8-1, at 98. And because he knew the basis for this ground once he was sentenced, Ohio's res judicata rule would prevent him from raising it now in a petition for post-conviction relief. *Durr*, 487 F.3d at 432. Hunter also does not assert cause or prejudice to excuse his default. This ground is thus procedurally defaulted.

Even if Hunter had preserved this ground, however, he could not prevail. To be sure, a defendant cannot be punished for exercising his rights. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). But the Supreme Court has explained that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id*. And although a defendant who is confronted "with the risk of more severe punishment clearly may" be "'discourag[ed]'" from exercising "'his trial rights, the imposition of these difficult choices [is] … inevitable'—and permissible." *Id*. at 364 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). According to the Court, "by tolerating and encouraging the negotiation of pleas, th[e] Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id*. The Court thus held that a prosecutor does not violate the due process clause of the Fourteenth Amendment when he "openly present[s a] defendant with the unpleasant alternatives of forgoing trial [and accepting his plea offer] or facing [reindictment for] charges on which he [i]s plainly subject to prosecution." *Id*. at 365.

Here, Hunter's complaint is about the nature of plea bargaining. But the Constitution does not prohibit plea bargains or the process that results in them. And under *Bordenkircher*, no due process violation occurs if a defendant is given notice during the plea negotiations that his failure to plead could result

in more serious charges—that he could actually face a more serious indictment—so long as the Government has proof that he could be indicted on these charges. *United States v. Spearman*, 166 F.3d 1215, 1998 WL 840870, at *4 (6th Cir. 1998) (unpublished). Given this fact, it cannot be a due process violation for, as is the case here, a prosecutor to simply argue for a lawful sentence based on the *original* charges on which a defendant was indicted. *See* Doc. 8-2, at 741 (arguing for a sentence within the statutory range). So this ground fails.

\* \* \*

Because Hunter failed to present his claims to any state court in his direct appeal and failed to follow the "ordinary appellate review procedures," his claims are procedurally defaulted.[4] *Boerckel*, 526 U.S. at 847.

---

[4]    To the extent that Hunter attempts to raise a claim under *Brady v. Maryland* in his traverse, Doc. 9, at 5, or a claim that the State failed to prove all the elements of his offenses, *id*. at 5–7, he has forfeited the claims by waiting until his traverse to raise them, *see Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."); *Dothard v. MacLaren*, No. 13-15217, 2015 WL 470585, at *26 (E.D. Mich. Feb. 3, 2015) ("'[A] traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. A court cannot consider new issues raised in a traverse or reply to the State's answer.'") (citation omitted).

## Conclusion

For the above reasons, I recommend that the Court dismiss Hunter's petition.

Dated: November 28, 2023

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).